**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT MORROW, ) | 2:04-CV-01269-BES-LRL |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| GARY COLOMBO, et al., ) | |
| Defendants. ) | |

Before the Court is Plaintiff Robert Morrow's ("Morrow") Application for Default Judgment Against Defendant Fretus Fiducia (#59). In this Application (#59), Plaintiff requests the following relief against Defendant Fretus Fiducia: damages in the principal amount of $10,000,000; treble damages in the amount of $30,000,000 pursuant to 18 U.S.C. § 1964(c); attorney's fees in the amount of $38,239 pursuant to 18 U.S.C. § 1964(c); and costs in the amount of $1,807.29 pursuant to 18 U.S.C. § 1964(c).

Federal Rule of Civil Procedure 55(b)(2) requires the party entitled to default judgment to apply to the court for the same, and authorizes the court "to determine the amount of damages," where necessary, "to enable the court to enter judgment or to carry it into effect." Where damages are liquidated, judgment by default may be entered without a damages hearing. Dundee Cement Co. v. Howard Pipe & Concrete Products, 722 F.2d 1319, 1323 (7th Cir. 1983). Granting or denying default judgment is within the court's sound discretion, and

///

the court is free to consider a variety of factors in exercising that discretion. See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).[1]

In this case, Morrow seeks a default judgment on his RICO claims. Pleading requirements should be enforced strictly when default judgments are sought under RICO. Alan Neuman Productions, Inc., v. Albright, 862 F.2d 1388 (9th Cir. 1989). To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property. Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001). "Racketeering activity" means any offense involving fraud connected with a case under title 11. 18 U.S.C. § 1961(1)(D). For the purposes of RICO, a "pattern of racketeering activity" requires at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5).

Morrow's complaint alleges each of the above elements. Defendants' conduct is set out in detail in ¶¶s 1-25 of Morrow's Third Amended Complaint ("the Complaint"). Morrow alleges the Defendants were engaged in an enterprise as defined by 18 U.S.C. § 1961 et.seq. in ¶ 20 of the Complaint. Morrow alleges the pattern of racketeering activity in ¶ 25 which states "the RICO Defendants have engaged in a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5) by committing and/or conspiring to commit two or more acts of racketeering activity including but not limited to mail fraud, wire fraud and securities fraud within the past ten years." Finally, Morrow alleges injury in ¶¶s 28 and 32 which state "as a direct and proximate result of [the] RICO Defendants' illegal activities in violation of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business or property."

Rule 9(b)'s requirement that "in all averments of fraud or mistake, the circumstances constituting fraud shall be stated with particularity" applies to civil RICO fraud claims. Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065–66 (9th Cir. 2004) (citing Alan Neuman, 862 F.2d at 1392). The circumstances constituting fraud are sufficiently alleged under Rule 9(b) if the

---

[1] The court may consider such factors as: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471–72.

1  complaint identifies the "time, place and nature of the alleged fraudulent activities, as well as
2  the identities of the parties to the misrepresentation. <u>Alan Neuman</u>, 862 F.2d at 1392–93. To
3  successfully identify the "nature of the alleged fraudulent activities," the complaint must state
4  with particularity the specific content of the allegedly fraudulent statements, and the reason
5  for the statements' falsity. <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985), <u>Blake v.</u>
6  <u>Dierdorff</u>, 856 F.2d 1365, 1369 (9th Cir. 1988).

7  Morrow's Complaint closely conforms to Rule 9(b)'s pleading requirements. The
8  Complaint clearly states the time of each alleged fraudulent activity. Def.'s App. (#8), ¶¶s 8,
9  10, 11, 12, 13, 15. Each party to the misrepresentations is properly identified to include
10 Colombo, Jenkins, Ellis, Martinez, Santana, Arquest, ZAG and Fretus Fiducia. <u>Id.</u> at ¶ 20.
11 The place where the fraudulent e-mails and letters took place is unclear, however the
12 complaint does specify that Morrow met Colombo in Las Vegas, Nevada where he was
13 presented with the allegedly fraudulent investment opportunity. This is sufficient under the
14 circumstances for the place requirement.

15 The Complaint has stated with particularity the specific content of the allegedly
16 fraudulent statements. The Complaint states that Colombo represented to Morrow that
17 Morrow's investment would be completely secure and that he would receive an SKR from a
18 well known European bank. (Complaint (#8), ¶ 7). The Complaint refers to several e-mail
19 transmissions between Morrow and several Defendants. The Defendants represented in the
20 transmissions that Morrow would receive and SKR from Brown Brothers Harriman, then later
21 from ZAG. <u>Id.</u> at ¶¶s 8-12. The Complaint also refers to a document attached as "Exhibit B,"
22 which documents several representations including that Morrow's investment could not be lost
23 or taken, that Colombo agreed to personally guarantee and indemnify Morrow for any loss to
24 his investment, and that Morrow relied on this document as an inducement to complete the
25 transaction. <u>Id.</u> at ¶ 13. Finally, the Complaint states with particularity the reason for the
26 statements' falsity. Paragraph 16 states that Morrow has received neither the promised SKR
27 nor evidence that his investment was insured, and Paragraph 19 states that Morrow has
28 ///

received neither a return of his original investment nor any of the promised return on his investment.

Morrow's Complaint successfully states a RICO claim and closely complies with the requirements of Rule 9(b). Before this Court can enter a default judgment against Fretus Fiducia, however, the Court must ascertain the proper amount of damages to which Morrow is entitled.

18 U.S.C. § 1964(c) provides that any person whose business or property is injured in violation of 18 U.S.C. § 1962 shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. The measure of civil damages under RICO is the harm caused by the predicate acts constituting the illegal pattern. Ticor Title Insurance Co. v. Florida, 937 F.2d 447, 451 (9th Cir. 1991). This figure is then trebled to arrive at the total damage figure. Id. These damages must be established by competent proof, not based upon mere speculation and surmise. Id.

To establish the amount due and owing upon default judgment, Morrow submitted the following: (1) Affidavit of Robert Morrow in Support of the Application for Default Judgment against Defendant Fretus Feducia ("Affidavit"). In the Affidavit, Morrow attests that he wired $10,000,000 to ZAG in reliance on the representations of the Defendants, and has not received his principle balance back, or any return on his investment. This $10,000,000 figure is the harm caused to Morrow by the predicate acts constituting the illegal pattern under RICO. Accordingly, this figure is trebled to arrive at the total damage figure of $30,000,000. Morrow has failed to submit any evidence to document his attorney's fees of $38,239, or for the costs of $1,807.29. Because these must be established by competent proof, this Court will not award Morrow the attorney's fees or the costs that he seeks.

///
///
///
///
///

1  For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Application for Default Judgment against Defendant Fretus Fiducia, LLC (#59) is granted, and that Default Judgment is entered against Defendant Fretus Fiducia for damages in the amount of $30,000,000.

IT IS SO ORDERED.

Dated this 7TH day of August, 2006.

_____
UNITED STATES DISTRICT JUDGE